1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

9  ROBIN L. HASHA,                                   No. 1:24-cv-00744-SAB (PC)

10              Plaintiff,                           ORDER DIRECTING CLERK OF COURT TO
                                                     RANDOMLY ASSIGN A DISTRICT JUDGE
11        v.                                         TO THIS ACTION

12  MARTIN GAMBOA, et al.,                           FINDINGS AND RECOMMENDATION
                                                     RECOMMENDING DISMISSAL OF THE
13              Defendants.                          ACTION FOR FAILURE TO STATE A
                                                     COGNIZABLE CLAIM FOR RELIEF
14
                                                     (ECF No. 19)
15

16        Plaintiff is proceeding pro se  and in forma pauperis in this action filed pursuant to 42

17  U.S.C. § 1983.

18        Currently before the Court is Plaintiff's second amended complaint, filed December 13,

19  2024.  (ECF No. 19.)

20                                              I.

21                            SCREENING REQUIREMENT

22        The Court is required to screen complaints brought by prisoners seeking relief against a

23  governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The

24  Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally

25  "frivolous or malicious," that "fail[] to state a claim on which relief may be granted," or that

26  "seek[] monetary relief against a defendant who is immune from such relief."  28 U.S.C. §

27  1915(e)(2)(B); see also 28 U.S.C. § 1915A(b).

28

1

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Moreover, Plaintiff must demonstrate that each defendant personally participated in the deprivation of Plaintiff's rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

## II.

## COMPLAINT ALLEGATIONS

The Court accepts Plaintiff's allegations in the complaint as true *only* for the purpose of the screening requirement under 28 U.S.C. § 1915.

John Doe #1 acted with deliberate indifference to Plaintiff's having been repeatedly raped by another inmate, intimating that Plaintiff got what she deserved. Defendant Doe #1 also retaliated against Plaintiff for reporting being raped by being dismissive of Plaintiff's report, suggesting that Plaintiff got what she deserved and purposefully failed to investigate the reported incident.

John Does #2 and #3 retaliated against Plaintiff for reporting being raped by forcing Plaintiff to go without water for several hours while handcuffed and restrained in a hot vehicle, not allowing Plaintiff to use the bathroom for over 12 hours under the guise of "preserving

1  evidence," making the entire process invasive and intimidating.

2      Plaintiff is a transgender woman. While housed at Avenal State Prison, Plaintiff was

3  raped ten times over a course of approximately six weeks by inmate Penn who threatened to kill

4  Plaintiff if she told anyone, including staff. During the six week period, inmate Penn forced

5  Plaintiff to have sex with him and physically abused Plaintiff, including busting her lip which

6  staff refused to notice.

7      The last incident with inmate Penn occurred on July 4, 2020, in which Penn forced

8  himself upon Plaintiff and make sexual comments to her. Plaintiff went to the lower-tier

9  restroom and attempted to get the attention of staff, to no avail. Because Plaintiff was afraid that

10  inmate Penn would carry out his threat of killing her if he saw Plaintiff approach officers,

11  Plaintiff enlisted the assistance of a friend to approach them. Plaintiff informed officers of the

12  misconduct by inmate Penn. At first the officers acted as though Plaintiff was joking but upon

13  realizing that Plaintiff was serious she was taken to medical.

14      Approximately thirty minutes after the incident, the on-duty sergeant (Defendant Doe #1)

15  entered medical to speak with Plaintiff. After recounting all of the incidents, the sergeant

16  "sneered" at Plaintiff and stated, "You're gonna get what you ask for," intimating that because

17  Plaintiff was a transgender woman and she deserved to be raped. Plaintiff was then informed that

18  inmate Penn told staff that he and Plaintiff were in a relationship, but Penn made no mention of

19  raping Plaintiff.

20      Approximately one hour later, a lieutenant went to medical and asked Plaintiff why she

21  was cuffed. The officers in the medical unit stating it was "to keep [Plaintiff] from tampering

22  with evidence." Later that morning, on July 5, 2020, Plaintiff was transported to an outside

23  hospital. While in the front section of the van had air conditioning for the officers, the rear

24  section did not. It was incredibly hot that day and the rear section of the van was sweltering.

25  Plaintiff was not given any water until the officers stopped at McDonalds for lunch several hours

26  later. Plaintiff made several requests from the transport officers (Defendants Doe #2 and #3) for

27  water. Plaintiff was also not allowed to go to the bathroom for approximately twelve hours after

28  the incident. Defendants Doe #2 and #3, stated that Plaintiff could not use the restroom so as to

3

1   "not tamper with evidence," even though Plaintiff had made clear to them that she needed to use

2   the restroom.

3         Once at the hospital, a female nurse performed a rape kit on Plaintiff.  As a transgender

4   woman inmate the protocol is for a female officer to be present when she is required to be

5   undressed.  The male officers (Does #2 and #3) refused to call a female officer to observe the

6   procedure and stood starring at Plaintiff while the nurse performed the rape kit test.  Plaintiff felt

7   humiliated, degraded, and violated to the point of tears.

8         On July 5, 2020, Plaintiff was also interviewed by officers from the Investigative Services

9   Unit (ISU).  The officers confirmed the incident and indicated they would be interviewing further

10   witnesses.  Over a month later, on August 17, 2020, Plaintiff with the ISU officers again.  This

11   time, however, they tried to get Plaintiff to sign off on a waiving her rights regarding her

12   allegations stating, "if I did they would submit a D.A. referral on the incident."  Plaintiff refused

13   to sign the waiver.  On this same date, Plaintiff was served with a 128B closure chrono by officer

14   A. Acosta which stated that the incident with inmate Penn was deemed "unsubstantiated."

15   Plaintiff signed the chrono without realizing what she was signing.

16         On January 20, 2021, Plaintiff filed an inmate grievance regarding her PREA claim.  The

17   grievance was granted at the first level of review stating, "the claimant was issued the PREA

18   closure chrono from ISU prematurely as the document states ISU has completed their inquiry into

19   this PREA case with a conclusion of findings as 'unsubstantiated.'  A review of the ISU PREA

20   case filed #ASP-PREA-20-07-003 revealed the investigation was still open/active as all physical

21   examination reports have not been received back from outside laboratory analysis."

22         To date, despite Plaintiff's inquiries, she has not been given any answers and staff has no

23   idea about the case.

24   **III.**

25   **DISCUSSION**

26   **A.    Prison Rape Elimination Act (PREA)**

27         Plaintiff claims that defendants failed to investigate and failed to properly investigate

28   her claims of alleged sexual assault by inmate Penn.  However, such claims do not provide a basis

1  for a plausible § 1983 claim. To the extent plaintiff is trying to hold defendants liable for an

2  independent, unspecified constitutional violation based upon an allegedly inadequate

3  investigation, there is no such claim. <u>See</u> <u>Gomez v. Whitney</u>, 757 F.2d 1005, 1006 (9th Cir. 1985)

4  (per curiam) ("[W]e can find no instance where the courts have recognized inadequate

5  investigation as sufficient to state a civil rights claim unless there was another recognized

6  constitutional right involved." ); <u>Page v. Stanley</u>, 2013 WL 2456798, at *8-9 (C.D. Cal. June 5,

7  2013) (dismissing Section 1983 claim alleging that officers failed to conduct thorough

8  investigation of plaintiff's complaints because plaintiff "had no constitutional right to any

9  investigation of the citizen's complaint, much less a 'thorough' investigation or a particular

10  outcome"); <u>see also</u> <u>Pickett v. Williams</u>, 498 F. App'x 699, 700 (9th Cir. 2012) ("[T]here is no

11  constitutional right to request an investigation or receive administrative review of prison

12  disciplinary proceedings.")  Thus, Plaintiff's claim that Defendants failed to "properly"

13  investigate Plaintiff's allegations, is without merit.

14       Further, Congress enacted PREA to address the problem of prison rape by: "(1)

15  developing national standards for the detection, prevention, reduction, and punishment of prison

16  rape;" (2) applying such national standards to governmental agencies and departments that

17  maintain correctional facilities; and (3) conditioning eligibility for federal grant money on

18  compliance with such standards. 42 U.S.C. §§ 15602, 15605; <u>Blair v. Herrera-Salazar</u>, 2019 WL

19  13448296, at *5–6 (S.D. Cal., Sept. 5, 2019, No. 3:19-CV-01261-DMS-KSC).  PREA creates a

20  scheme which requires institutional compliance with stated Congressional goals in exchange for

21  federal funding. <u>See</u> 42 U.S.C. §§ 15602, 15605.

22       However, PREA does not create a private right of action for prisoners to sue based on a

23  violation of PREAs terms. "A private right of action 'to enforce federal law must be created by

24  Congress." <u>Alexander v. Sandoval</u>, 532 U.S. 275, 286 (2001). A person's "ability to bring a

25  private right of action may be authorized by the explicit statutory text or, in some instances, may

26  be implied from the statutory text" where "there is clear evidence" of Congressional intent.

27  <u>Nisqually Indian Tribe v. Gregoire</u>, 623 F.3d 923, 929 (9th Cir. 2010).  The Court's role is to

28  "interpret the statute Congress has passed to determine whether it displays an intent to create not

1  just a private right but also a private remedy." Id.  Without "specific Congressional intent, no

2  private right of action exists."

3        The PREA does not "explicitly or implicitly suggest[ ] that Congress intended to create a

4  private right of action for inmates to sue prison officials for noncompliance with the Act."

5  Hatcher v. Harrington, 2015 WL 474313, at *5 (D. Hawaii, Feb. 5, 2015). "Nor does the PREA's

6  language, structure, context, or legislative history suggest that Congress intended to create a

7  private remedy for noncompliance with the PREA." Hatcher, 2015 WL 474313, at *5; see 42

8  U.S.C. § 15607(e) (explicitly directing the Attorney General to enforce compliance with the

9  PREA); Alexander, 532 U.S. at 286 (explaining that absent Congressional intent "to create not

10  just a private right but also a private remedy ... no private right of action exists."); see also Denton

11  v. Pastor, 2017 WL 5068329, at *1 (W.D. Wash. Nov. 2, 2017) ("any claim predicated on

12  purported statutory violations of the PREA must be dismissed"); Reed v. Racklin, 2017 WL

13  2535388, at *2 (E.D. Cal. June 12, 2017) ("The PREA does not give rise to a private cause of

14  action").

15        Therefore, Plaintiff's claims that officers failed to follow PREA's rules when

16  investigating allegations of sexual assault do not state a cognizable claim in this Court and are

17  subject to dismissal.  Further, it is clear from Plaintiff's complaint that she was subsequently

18  taken to an outside hospital to perform a rape test kit.  Thus, Plaintiff's complaints that she was

19  raped by inmate Penn were obviously investigated.

20        **B.**    **Failure to Protect**

21        To the extent Plaintiff seeks to proceed on a claim for failure to protect against Defendant

22  Doe #1, Plaintiff fails to state a cognizable claim.

23        Prison officials have a duty under the Eighth Amendment "to protect prisoners from

24  violence at the hands of other prisoners," Farmer v. Brennan, 511 U.S. 825, 833 (1994) (citations

25  omitted), and, by extension, correctional officers. "Omissions can violate civil rights, and 'under

26  certain circumstances a state actor's failure to intervene renders her culpable under § 1983.'"

27  Chavez v. Ill. State Police, 251 F.3d 612, 652-3 (7th Cir. 2001) (quoting Yang v. Hardin, 37 F.3d

28  282, 285 (7th Cir. 1994)).

To succeed on such a claim, an inmate must first demonstrate she is "incarcerated under conditions posing a substantial risk of serious harm." Farmer, 511 U.S. at 834. Second, the inmate must show prison officials acted with deliberate indifference to that risk, which requires a subjective inquiry into a prison official's state of mind. Id. at 838-39. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk or serious harm exists, and she must also draw the inference." Id. at 837.

A prisoner may demonstrate that prison officials were aware of a specific, impending, and substantial threat to her safety "by showing that [s]he complained to prison officials about a specific threat to [her] safety." Pope v. Shafer, 86 F.3d 90, 92 (7th Cir. 1996) (quoting McGill v. Duckworth, 944 F.2d 344, 349 (7th Cir. 1991)). The prison official may be held liable only if she knows an inmate faces a substantial risk of serious harm and "disregards that risk by failing to take reasonable measures to abate it." Farmer, 511 U.S. at 847. A plaintiff also "can establish exposure to a significantly serious risk of harm by showing that [s]he belongs to an identifiable group of prisoners who are frequently singled out for violent attack by other inmates." Id. at 843 (quotation omitted). "Liability may follow only if a prison official 'knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.' " Labatad v. Corrections Corp. of America, 714 F.3d 1155, 1160 (9th Cir. 2013) (quoting Farmer, 511 U.S. at 847).

Plaintiff's allegations fail to demonstrate that Defendant Doe #1 had any prior knowledge of the alleged assaults and failed to act to protect Plaintiff. Plaintiff's only allegations indicate that her involvement with Defendant Doe #1 took place after the alleged assaults and involve Doe #1 making verbal statements against Plaintiff.[1]

///

---

[1] Allegations of name-calling, verbal abuse, or threats generally fail to state a constitutional claim under the Eighth Amendment, which prohibits cruel and unusual punishment. See Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996) ("[V]erbal harassment generally does not violate the Eighth Amendment."), opinion amended on denial of reh'g, 135 F.3d 1318 (9th Cir. 1998); see also Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987) (holding that a prisoner's allegations of threats allegedly made by guards failed to state a cause of action). Even in cases concerning "abusive language directed at [a plaintiff's] religious and ethnic background, 'verbal harassment or abuse is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983.' " Freeman v. Arpaio, 125 F.3d 732, 738 (9th Cir. 1997) (quoting Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987)) (alterations omitted), abrogated on other grounds by Shakur v. Schriro, 514 F.3d 878 (9th Cir. 2008).

1

      **C.**      **Eighth Amendment/Transportation**

2

      Plaintiff contends that on July 5, 2020, she was not given any water for several hours,

3 despite the fact that it was incredibly hot that day and the rear section of the van did not have air

4 conditioning.  Plaintiff also claims that she was not allowed to go to the bathroom for

5 approximately twelve hours after the incident.

6

      To prevail on an Eighth Amendment claim where the conditions of confinement are

7 challenged rather than the confinement itself, a plaintiff must make two showings. First, the

8 plaintiff must make an "objective" showing that the deprivation was "sufficiently serious" to form

9 the basis for an Eighth Amendment violation. Wilson v. Seiter, 501 U.S. 294, 298 (1991).

10 Second, the plaintiff must make a subjective showing that the prison official acted "with a

11 sufficiently culpable state of mind." Id.; Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000).

12 This means that a prison official may be found liable "only if he knows that inmates face a

13 substantial risk of serious harm and disregards that risk by failing to take reasonable measures to

14 abate it." Farmer v. Brennan, 511 U.S. 825, 847 (1994). Whether an official possessed such

15 knowledge "is a question of fact subject to demonstration in the usual ways, including inference

16 from circumstantial evidence[.]" Id. at 842.

17

      "Although the routine discomfort inherent in the prison setting is inadequate to satisfy the

18 objective prong of an Eighth Amendment inquiry, those deprivations denying 'the minimal

19 civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth

20 Amendment violation." Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quoting Wilson,

21 501 U.S. at 298). "The circumstances, nature, and duration of a deprivation of these necessities

22 must be considered in determining whether a constitutional violation has occurred." Id.

23

      Courts in this and other districts have held that a temporary delay in allowing a prisoner to

24 use a restroom fall short of establishing an Eighth Amendment claim. See, e.g., von Koenigsberg-

25 Tyrvaldssen v. Kohut, 2017 WL 1277457, at *9-*10 (D. Mont. Jan. 20, 2017) (isolated incidents

26 of not having immediate access to a bathroom were insufficient to state a federal constitutional

27 claim; providing summary of similar cases); Samu v. Stewart, 2011 WL 4074781, at *2 (W.D.

28 Mich. Sept. 13, 2011) (finding isolated and temporary refusal or delay in allowing a prisoner to

1   use the bathroom did not support an Eighth Amendment claim); see also Hartsfield v. Vidor, 199

2   F.3d 305, 309–10 (6th Cir. 1999) (allegations that prisoner was denied use of a toilet for two

3   separate 8–hour periods over two days did not state a claim for violation of the Eighth

4   Amendment); Gerst v. Arpaio, 2012 WL 3228838, at *4 (D. Ariz., Aug. 6, 2012) ("As to

5   Plaintiff's claim that she was deprived of air conditioning, water, and the use of a bathroom for

6   three hours, she has alleged a temporary inconvenience, not a "sufficiently serious" deprivation");

7   Saenz v. Reeves, 2012 WL 4049975, at *14 (E.D. Cal., Sept. 13, 2012) ("[D]enying Plaintiff

8   access to a toilet and water for five and one half hours on one occasion and four and one half

9   hours on a separate occasion, while she was kept in a holding cell, are not sufficient to rise to the

10  level of a sufficiently serious deprivation to violate the Eighth Amendment.").

11          A temporary delay in allowing a prisoner to use a restroom falls short of a constitutional

12  deprivation, but the Eighth Amendment is implicated if a prison's restroom facilities are so

13  inadequate that they inescapably result in prisoners urinating or defecating into their clothing.

14  Johnson, 217 F.3d at 733; see also Santos v. Corr. Corp. of Am., No. CV 11-630-PHX-JAT, 2011

15  WL 1375158, at *2–3 (D. Ariz. Apr. 12. 2011) (prisoner did not allege sufficiently serious

16  deprivation where he was denied use of a toilet for one hour and thirty-five minutes, causing him

17  to relieve himself in a bucket); Saenz v. Reeves, No. 1:09-CV-00557-BAM PC, 2012 WL

18  4049975, at *14 (E.D. Cal. Sept. 13, 2012) ("[D]enying Plaintiff access to a toilet and water for

19  five and one half hours on one occasion and four and one half hours on a separate occasion, while

20  he was kept in a holding cell, are not sufficient to rise to the level of a sufficiently serious

21  deprivation to violate the Eighth Amendment."); Salinas v. Cty. of Kern, No. 1:18-cv-00235-

22  BAM PC, 2018 WL 5879703, at *4 (E.D. Cal. Nov. 7, 2018) ("Plaintiff's allegation that he was

23  denied access to a restroom and water for approximately nine hours on a single day is insufficient

24  to state a claim upon which relief may be granted.").  To state a claim under the Eighth

25  Amendment, a plaintiff must allege not only a sufficiently serious deprivation but also that "the

26  defendant officials had actual knowledge of the plaintiffs' basic human needs and deliberately

27  refused to meet those needs." Johnson, 217 F.3d at 734. A plaintiff may prove such knowledge

28  through inference from circumstantial evidence.  Id.

In this instance, the Court finds that Plaintiff has failed to state a cognizable claim for relief. Plaintiff does not allege that the delay in providing her water, absent any specific facts that would support a reasonable inference that she suffered dehydration, placed her in substantial risk of suffering serious harm or actually caused her injury. In addition, the denial of access to a toilet for approximately twelve hours on one occasion, absent any specific facts that Plaintiff suffered serious harm or actually injury, does not sufficient to rise to the level of a sufficiently serious deprivation to violate the Eighth Amendment. See Hartsfield v. Vidor, 199 F.3d 305, 310 (6th Cir.1999) (denial of water and bathroom for two eight hour periods on two days not cruel and unusual punishment); Schilling v. TransCor America, LLC, No. 3:08–cv–00941–SI, 2012 WL 3257659, *9 (N.D. Cal. Aug.8, 2012) (restricting bathroom use to every three and one half to four hours during a twenty four hour transport does not impose a constitutional deprivation); Gerst v. Arpaio, No. 2:12–cv–01353–PHXRCB (JFM), 2012 WL 3228838, *4 (D. Ariz. Aug. 6, 2012) (denial of air conditioning, water, and use of bathroom for three hours not sufficiently serious deprivation); Wilkins v. Ahern, No. 3:08–cv–01084–MMC (PR), 2008 WL 4542413, *6 (N.D. Cal. Oct. 6, 2008) (housing in cell with clogged toilet for six hours, without a mattress for twelve hours, and a filthy toilet for forty-eight hours does not rise to an Eighth Amendment violation); cf Hope v. Pelzer, 536 U.S. 730, 738 (2002) (finding claim where defendants knew there was a risk of substantial physical harm, unnecessary pain from handcuffing inmate to hitching post for seven hour period, unnecessary exposure to the sun after inmate was required to remove her shirt, prolonged thirst and taunting by guard who spilled water nearby, and deprivation of bathroom breaks that risked discomfort and humiliation). In sum, nothing in the complaint demonstrates that Plaintiff suffered any substantial harm from the denial of water and toilet use during the transport to an outside hospital on July 5, 2020. Accordingly, Plaintiff fails to state a cognizable claim for relief.

### D.    Fourth and Eighth Amendments/Rape Kit Test

Plaintiff contends that male officers (Does #2 and #3) refused to call a female officer to observe the rape test procedure and stood starring at Plaintiff while the nurse performed the rape kit test. Plaintiff felt humiliated, degraded, and violated to the point of tears.

10

"The Fourth Amendment prohibits only unreasonable searches." Bell v. Wolfish, 441 U.S. 520, 558 (1979). Courts regularly recognize the importance and difficulty of keeping detention facilities free from drugs, weapons, and other contraband. Id. at 559; see also Way v. Cty. of Ventura, 445 F.3d 1157, 1161 (9th Cir. 2006).  However, courts also recognize the "frightening and humiliating invasion" occasioned by a strip search "even when conducted with all due courtesy." Way, 445 F.3d at 1160 (internal quotation marks omitted); Byrd v. Maricopa Cty. Sheriff's Dep't, 629 F.3d 1135, 1143 (9th Cir. 2011). Although some visual body cavity searches of prisoners may be reasonable, others can "be excessive, vindictive, harassing, or unrelated to any legitimate penological interest." Michenfelder v. Sumner, 860 F.2d 328, 322 (9th Cir. 1988). There is no precise definition to assess reasonableness, and each case "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." Bell, 441 U.S. at 559. The prisoner "bears the burden of showing that [prison] officials intentionally used exaggerated or excessive means to enforce security." Thompson v. Souza, 111 F.3d 694, 700 (9th Cir. 1997) (quoting Michenfelder, 860 F.2d at 333) (finding visual body cavity search conducted in full view of other inmates and intended to detect illicit drugs was reasonably related to a legitimate penological interest).

Cross-gender searches are viewed differently.  An Eighth Amendment violation has been found where the female prisoner plaintiffs, found to be particularly vulnerable to a severe psychological injury from the search, are subjected to random cross-gender clothed body searches unrelated to prison security. Jordan v. Gardner, 986 F.2d 1521, 1525–28 (9th Cir. 1993) (finding cross-gender body search policy constituted unnecessary "infliction of pain" under the Eighth Amendment where women inmates had "shocking histories of verbal, physical, and, in particular, sexual abuse" by men). Although a cross-gender strip search that involves touching the inmate's genitalia and searching inside the anus is unreasonable, Byrd, 629 F.3d 1135, 1142 (9th Cir. 2011) (en banc), that does not mean that all cross-gender searches are unreasonable, or that prisoners of one gender may not be guarded by guards of the other gender. Uvalles v. Jaquez, No. C 09-5221 RMW PR, 2013 WL 1283390, at *8–9 (N.D. Cal. Mar. 27, 2013).  In Grummett v. Rushen, 779 F.2d 491, 494 (9th Cir. 1985), the Ninth Circuit upheld a system of assigning female

1   officers within a correctional facility such that they occasionally viewed male inmates in various

2   states of undress and conducted routine pat-downs of fully clothed inmates. Id., citing Byrd, 629

3   F.3d at 1142. Assigned positions of female guards that required only infrequent and casual

4   observation, or observation at a distance, of unclothed male prisoners and that are reasonably

5   related to prison needs are not so degrading as to warrant court interference. Grummett, 779 F.2d

6   at 494, citing Michenfelder, 860 F.2d at 334 (held that routine visual body cavity searches

7   conducted in hallways did not violate the Fourth Amendment after situations where inmates had

8   been presented with the opportunity to obtain contraband or a weapon); see also Jordan, 986 F.2d

9   at 1524–25 (en banc) (privacy interest in freedom from cross-gender clothed body searches not

10  "judicially recognized"). The issue is whether officers regularly or frequently observe unclothed

11  inmates of the opposite sex without a legitimate reason for doing so. Uvalles, 2013 WL 1283390,

12  at *8–9, citing Michenfelder, 860 F.2d at 334.

13          In this case, based on the allegations in the second amended complaint, Plaintiff fails to

14  state a cognizable claim for violation of the Fourth or Eighth Amendments related to rape kit test.

15  It is clear that the search was conducted to perform the rape test, and Plaintiff was not touched in

16  any way by either Doe #2 or Doe #3.  Indeed, Plaintiff also does not allege that the search was

17  excessive or unrelated to a legitimate penological purpose and was an isolated occurrence.

18  Plaintiff's exposure was incidental to performing the rape kit test.  See, e.g., Grummett, 779 F.2d

19  at 495–96 (finding claims that surveillance by female guards involving occasional viewing of

20  disrobed male inmates, even if treated as a bodily search, was not unreasonable or prohibited by

21  the Fourth Amendment); Michenfelder, 860 F.2d at 334 (no Fourth or Eighth Amendment

22  violation found where a male inmate complained that routine visual body cavity searches were

23  sometimes performed within view of female guards, and female guards were assigned to shower

24  duty). Besides Plaintiff's conclusory statement, there are not facts in Plaintiff's complaint

25  suggesting any such limited exposure was degrading, given the circumstances. Grummett, 779

26  F.2d at 495. This minimal and brief viewing of Plaintiff's bodily privacy did not rise to the level

27  of a constitutional violation.  Accordingly, Plaintiff fails to state a cognizable claim for relief.

28  ///

1

### E.    Inmate Appeal Process

2      "The Fourteenth Amendment's Due Process Clause protects persons against deprivations

3  of life, liberty, or property; and those who seek to invoke its procedural protection must establish

4  that one of these interests is at stake." Wilkinson v. Austin, 545 U.S. 209, 221 (2005). "The

5  Supreme court has held that a State creates a protected liberty by placing substantive limitations

6  on official discretion, [and] that to obtain a protectable right an individual must have a legitimate

7  claim of entitlement to it, [but] there is no legitimate claim of entitlement to a grievance

8  procedure." Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988) (citations and quotations

9  omitted).  Plaintiff's allegations of a due process violation arising from the processing of her

10  inmate grievance fails to state a claim because there is no protected liberty interest or independent

11  constitutional right to a prison administrative appeal or grievance system. Id.; see also Ramirez v.

12  Galaza, 334 F.3d 850, 860 (9th Cir. 2003) ("[I]nmates lack a separate constitutional entitlement to

13  a specific prison grievance procedure." (citing Mann, 855 F.2d at 640)).  Plaintiff cannot state a

14  cognizable claim based on the processing and/or determination of any inmate grievances.

15

### F.    Further Leave to Amend

16      If the Court finds that a complaint or claim should be dismissed for failure to state a claim,

17  the Court has discretion to dismiss with or without leave to amend. Leave to amend should be

18  granted if it appears possible that the defects in the complaint could be corrected, especially if a

19  plaintiff is pro se. Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc); Cato v.

20  United States, 70 F.3d 1103, 1106 (9th Cir. 1995) ("A pro se litigant must be given leave to

21  amend his or her complaint, and some notice of its deficiencies, unless it is absolutely clear that

22  the deficiencies of the complaint could not be cured by amendment." (citation omitted).

23  However, if, after careful consideration, it is clear that a claim cannot be cured by amendment,

24  the Court may dismiss without leave to amend. Cato, 70 F.3d at 1105-06.

25      In light of Plaintiff's failure to provide additional information about her claims despite

26  specific instructions from the Court, further leave to amend would be futile and the second

27  amended complaint should be dismissed without leave to amend. Hartmann v. CDCR, 707 F.3d

28  1114, 1130 (9th Cir. 2013) ("A district court may deny leave to amend when amendment would

13

be futile."). Here, Plaintiff's allegations fail to give rise to a constitutional violation, and Plaintiff has previously been given leave to amend on two separate occasions.  Accordingly, further leave to amend the complaint should be denied.

**IV.**

**ORDER AND RECOMMENDATION**

Based on the foregoing, it is HEREBY ORDERED that the Clerk of Court shall randomly assign a District Judge to this action.

Further, it is HEREBY RECOMMENDED that the action be dismissed, without further leave to amend, for failure to state a cognizable claim for relief.

This Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **thirty (30) days** after being served with this Findings and Recommendation, Plaintiff may file written objections with the Court, limited to 15 pages in length, including exhibits.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **February 19, 2025**

STANLEY A. BOONE
United States Magistrate Judge